421 A.2d 744

Patricia Ann GARBER

v.

The TRAVELERS INSURANCE COMPANIES and Charles
Shimmel and Virginia Shimmel, his wife.

Appeal of The TRAVELERS INSURANCE COMPANIES.

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed Sept. 26, 1980.

Denis P. Zuzik, Greensburg, for appellant.

Thomas P. Cole, II, Greensburg, for appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is a declaratory judgment action. The issue is whether appellant insurance company is obliged to provide appellee with coverage following an automobile accident in which appellee was involved while driving her husband's automobile. The lower court found coverage and the insurance company has appealed.[1]

Almost all of the essential facts were stipulated, and are as follows. On April 13, 1975, the date of the accident,

---

1. In keeping with the requirement of the Uniform Declaratory Judgments Act, Act of June 18, 1923, P.L. 840, § 11, 12 P.S. § 841, which was in effect when this action was started, that all persons who have any claim or interest in the matter be made parties, Charles and Virginia Shimmel, the owner and driver respectively of the other automobile involved in the accident, were also named parties in the declaratory judgment action. The Shimmels are not parties to this appeal.

appellee was married to Louis Garber. Appellee owned a 1971 Ford Maverick, which was covered by the policy at issue. Appellee's husband owned a 1966 Buick. Appellee drove her husband's Buick only with his specific permission, and when her Ford was unavailable. On the day of the accident, appellee was driving her husband's Buick because her Ford was inoperable because of a mechanical problem. The one relevant fact not stipulated was whether appellee and her husband were residing in the same household at the time of the accident. The lower court found that appellee's testimony established that they were, and no party has objected to that finding.

■ The construction of an insurance policy is a question of law, *Adelman v. State Farm Mutual Auto Insurance Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978), but it is not the function of the court to rewrite a policy or give its terms a construction in conflict with their plain meaning, *Pennsylvania Manufacturers Association Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). Any ambiguous term must be construed favorably to the insured, *Patton v. Patton*, 413 Pa. 566, 198 A.2d 578 (1964), but a term is ambiguous only "if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning," *Celley v. Mutual Benefit Health & Accident Association*, 229 Pa.Super. 475, 481–82, 324 A.2d 430, 434 (1974).

■ The policy before us is a standard automobile insurance policy. The first page contains the declarations or statements particular to the policy; Item 1 identifies appellee as the named insured, and Item 3 identifies her 1971 Ford. Following this page are eleven pages of printed policy terms; only the first two of these concern us. On the first page of printed policy terms is a large heading, "Part I—Liability." Under that heading at the top of the right hand column in bold type is another heading, "Persons Insured," and under that, still on the first page, in the same bold type, the heading "Definitions." The "Definitions"

section continues onto the second page of printed policy terms; this continuation is indicated in bold type on the first page.[2]

The coverage provided under the "Persons Insured" is "(a) with respect to the owned automobile," and "(b) with respect to the non–owned automobile." Since appellee was driving her husband's Buick, the question is whether coverage was extended with respect to the Buick as either an "owned" or "non–owned" automobile.

2. The relevant printed policy terms are:
Persons Insured
Each of the following is an Insured under Part I:
   (a) with respect to the owned automobile,
   (1) the named insured and any resident of the same household,
   (2) any other person using such automobile with the permission of the named insured, . . . .
   (b) with respect to a non–owned automobile,
   (1) the named insured
   (2) any relative, but only with respect to a private passenger automobile or trailer, . . . .

Definitions
Under Part I:
"named insured" means any individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;
"insured" means a person or organization described under "Persons Insured";

"relative" means a relative of the named insured who is a resident of the same household;

"owned automobile" means
(a) a private passenger or utility automobile described in Item 3 of the declarations for which a specific premium charge indicates that coverage is afforded,

(d) a temporary substitute automobile;
"temporary substitute automobile" means any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.
"non–owned automobile" means a four wheel land motor vehicle . . . which vehicle or trailer is not owned by or furnished or available for the regular use of either the named insured or any relative, but does not include a temporary substitute automobile.

It might seem that since the Buick was appellee's husband's, coverage would extend to it as a "non–owned automobile." However, "non–owned automobile" is defined as an automobile "not owned by . . . *either* the named insured *or* any relative . . . ." (Emphasis added.) "Relative" is defined as "a relative of the named insured who is a resident of the same household." Therefore, the Buick was owned by a relative of appellee–her husband–and so was not a "non–owned automobile." The question therefore becomes whether coverage extended to the Buick was an "owned automobile."

"Owned automobile" is defined as the "automobile described in Item 3 of the declarations." That automobile was appellee's Ford. However, "owned automobile" is *also* defined as a "temporary substitute automobile." The issue in this case is whether the Buick was a "temporary substitute automobile."

"Temporary substitute automobile" is defined as "any automobile . . ., not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile . . . when withdrawn from normal use because of its breakdown, repair, servicing . . . ." Appellee argues that her husband's Buick fit within this definition, because she was using it with her husband's permission while her Ford was being repaired. The difficulty with this argument is that to qualify as a "temporary substitute automobile," the Buick had to be an automobile "not owned by the named insured." "Named insured" is defined as "any individual named in Item 1 of the declarations [*i. e.,* appellee] *and also includes* his spouse, if a resident of the same household [emphasis added]." Thus, appellee's husband is a "named insured," and the Buick therefore *was* "owned by a named insured," and so did not qualify as a "temporary substitute automobile."

The lower court believed that this construction of the policy, which makes a distinction between appellee's temporary use of her neighbor's automobile, which would have

been covered as a non–owned automobile, and appellee's use of her husband's automobile, which was not covered, was "[i]llogical and unconscionable." Slip op. at 10. The court noted that appellee's husband would not have been covered under the policy while driving his own uninsured automobile despite his characterization as a "named insured." *Id.* This is true but it does not follow that the policy is either illogical or unconscionable. The entire design of the policy is to provide broad coverage to the named insured in driving the automobile identified in the policy declarations and also in driving other vehicles except for those owned by or regularly made available to the named insured. Thus while the policy would not have covered appellee's husband when driving his own automobile, it would have covered him while driving appellee's automobile (the "owned automobile" when driven by the "named insured") and also while driving a neighbor's car (a "non–owned automobile" when driven by "the named insured"). Courts should protect the reasonable expectations of insurance policy holders, but policy holders should read their insurance contracts. *DiOrio v. New Jersey Manufacturers Insurance Company*, 79 N.J. 257, 398 A.2d 1274 (1979).[3] When the terms of a policy are clearly defined and form a coherent whole, it is not the role of a court to find ambiguity or unconscionability where none exists, and then rewrite the policy piecemeal.

This case appears to be of first impression in Pennsylvania. We are, however, fortified in our belief that we have reached the correct result by our review of cases from other states. Three recent cases have construed policies essentially identical to the one before us, and have found that because of the spouse's status as a named insured, an automobile owned by the spouse of the policy holder does not qualify as a temporary substitute automobile. *Government Employees Insurance Co. v. Kligler*, 42 N.Y.2d 863, 397

---

**3.** The court in *DiOrio* had before it a policy very similar to the one before us. Justice CLIFFORD's opinion is a thoughtful discussion of the public policy issues involved when terms in an insurance policy are defined clearly and unambiguously, although it is necessary to read the policy to know what they mean.

N.Y.S.2d 777, 366 N.E.2d 865 (1977); *Cotton States Mutual Insurance Co. v. Bowden,* 136 Ga.App. 499, 221 S.E.2d 832 (1975); *Illinois National Insurance Co. v. Trainer,* 1 Ill. App.3d 34, 272 N.E.2d 58 (1971). Appellee cites two somewhat older cases where under the same or similar policy language coverage was provided to an automobile owned by a spouse. The first, *Baxley v. State Farm Mutual Auto Liability Insurance Company,* 241 S.C. 332, 128 S.E.2d 165 (1962), had reasoned by analogy from two other cases, which had not only not involved married couples but also appear to have turned on particular aspects of state law, *Farley v. American Automobile Insurance Company,* 137 W.Va. 455, 72 S.E.2d 520 (1952); *St. Paul Indemnity Company v. Heflin,* 137 F.Supp. 520 (W.D.Ark.1956). The second, *Caldwell v. Hartford Accident and Indemnity Company,* 248 Miss. 767, 160 So.2d 209 (1964), followed *Baxley* without engaging in any independent analysis. These cases do not persuade us.

The order of the lower court is reversed.